UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DONALD MITCHELL (#527866)                                           CIVIL ACTION

VERSUS

D.O.C., L.S.P., ANGOLA, ET AL.                                    NO. 12-0092-BAJ

## RULING

This matter comes before the Court on the defendants' Motion for Summary Judgment, rec.doc.no. 29. This motion is opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against LSP, the Louisiana Department of Public Safety and Corrections ("DOC"), Major Trent Barton, Legal Programs Officer Trish Foster, and unidentified classification officers and mental health officials employed at LSP, complaining that the defendants violated his constitutional rights by maintaining him in punitive segregated confinement at Camp J at LSP for a period exceeding 1½ years, notwithstanding that he engaged in no misconduct during this period which warranted such continued confinement and notwithstanding that the Camp J Management Program at LSP is designed to result in only approximately six months of confinement at that location.[1]

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent administrative

---

[1] Pursuant to voluntary dismissal, the plaintiff has dismissed his claims asserted against LSP, DOC and the unidentified classification officers and mental health employees employed at LSP. See rec.doc.no 35.

remedy proceedings, a copy of LSP Directive No. 10.013 (relative to the "Camp J Management Program"), a copy of DOC Regulation No. B-05-005 (relative to the "Administrative Remedy Procedure"), certified copies of the plaintiff's Yard, Shower and Tier Rosters for the months of September, 2010, through April, 2012, a certified copy of the plaintiff's Conduct Record, and the affidavits of defendants Trent Barton and Trish Foster.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra. Summary judgment is appropriate in any case where the evidence is so weak or tenuous

on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little, supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

It appears from the record that in August, 2010, the plaintiff was involved in an "aggravated fight" (involving a weapon) with a co-inmate at another institution. Upon being found guilty in connection with this infraction, the plaintiff was transferred to LSP on September 7, 2010, and was classified to the Camp J Management Program at LSP, which Program is a three-level punitive segregated housing unit utilized as a means of transitioning inmates with disciplinary problems from segregated confinement to less onerous housing assignments within the prison. Pursuant to regulation, inmates classified to this Program are evaluated at 90-day intervals by 3-person review panels for the purpose of determining whether they may appropriately be transferred to a higher level within the Program or to more beneficial quarters. The plaintiff complains, however, that he was denied due process as a result of his initial classification to the Program and at ensuing periodic review hearings and that there are no objective criteria or written guidelines in place for determining when an inmate may appropriately be released from the Camp J Program. He asserts that he was maintained in the Camp J Program for a period in excess of 1½ years,[2] with the reasons given by the periodic review panels for his

---

[2] It appears from the record that since the filing of the Complaint, the plaintiff has been released from the Camp J Management Program and has been assigned to another housing unit at LSP, effective in April, 2012.

continued confinement being only "the original reason for lockdown." He claims that the absence of established criteria or written guidelines results in arbitrary and capricious decision-making and that, as a result, other inmates with more serious disciplinary problems were released from the Program whereas he was maintained at that location. He asserts that during the period of his confinement at Camp J, he maintained an exemplary conduct record and, accordingly, should not have been subjected to the continuing deprivations imposed by that housing assignment. Finally, he complains that when he filed one or more administrative grievances relative to his continued confinement at Camp J, defendant Trish Foster rejected his grievance(s) for the reason that the grievance procedure was not applicable to the decisions of the periodic review panels.

In response to the plaintiff's Complaint, the defendants assert that they are entitled to qualified immunity. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right

4

was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful <u>in the situation which he confronted</u>. <u>Id.</u> In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his constitutional rights.[3]

Undertaking the <u>Saucier</u> analysis, the Court concludes that the defendants' motion is well-taken and that the plaintiff's allegations fail to overcome the assertion of qualified immunity.

Initially, the Court notes that the plaintiff has named the defendants in both their individual and official capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" under § 1983. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Specifically, in <u>Hafer v. Melo</u>, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. <u>Id.</u> Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the

---

[3] The United States Supreme Court has recently held that rigid chronological adherence to the <u>Saucier</u> two-step methodology is no longer mandatory. <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the <u>Saucier</u> methodology will be "often beneficial", the <u>Callahan</u> Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

5

defendants in their individual capacities remains viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Hafer v. Melo, supra. Thus, a showing by the plaintiff that the defendant state officials, acting individually and under color of state law, intentionally caused the deprivation of the plaintiff's federal rights, would be enough to establish personal liability in a § 1983 lawsuit. Id.[4]

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the Court first finds that the plaintiff has failed to allege that defendant Trish Foster participated personally in the constitutional violation alleged. In this regard, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing the alleged deprivation of a constitutional right or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756, at 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees is alone insufficient to state a claim under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Applying the foregoing standard, the Court finds that the plaintiff has failed to state a cause of action against defendant Foster. Specifically, the plaintiff has failed to allege

---

[4]The plaintiff's Complaint also seeks injunctive relief against the defendants, specifically an Order compelling the defendants "to release Plaintiff from Camp J." In this regard, a claim for prospective relief asserted in federal court against a defendant acting in his official capacity is not prohibited under the Eleventh Amendment because such a suit is not treated as an action against the state. Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). See also 15 Am.Jur.2d Civil Rights § 101. Notwithstanding, it appears from the defendants' motion that the plaintiff has since been reclassified and is no longer confined at Camp J. Accordingly, his claim for injunctive relief has become moot as a result of his transfer to another housing assignment. See, e.g., Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001) (holding that an inmate's transfer from the place where a constitutional violation has occurred normally "render[s] ... claims for declaratory and injunctive relief moot").

Case 3:12-cv-00092-BAJ-MJU    Document 36    01/25/13    Page 6 of 14

that this defendant participated in originally classifying the plaintiff to punitive segregated confinement in September, 2010, or participated thereafter in any of the periodic 90-day review panels which evaluated the propriety of releasing the plaintiff to the general population or to a less onerous housing assignment. All that the plaintiff alleges relative to defendant Foster is that this defendant took action to reject the plaintiff's administrative grievances, finding that the grievance procedure was not available in connection with the plaintiff's claims. The law is clear in this regard, however, that an inmate is not constitutionally entitled to an investigation of facts alleged in his administrative grievances or to a favorable response to same. Specifically, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in <u>Geiger v. Jowers</u>, 404 F.3d 371 (5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

(Emphasis in original). Accordingly, the plaintiff's claim asserted against defendant Foster of a mere failure to properly investigate, respond or take action in response to the plaintiff's administrative grievances is without legal foundation, and this defendant is entitled to judgment as a matter of law.

Turning to the plaintiff's claim asserted against defendant Trent Barton, the plaintiff complains that this defendant presided over periodic reviews of the plaintiff's custody status and improperly determined to maintain the plaintiff within the Camp J Program for a period exceeding 1½ years. This claim, however, fails to rise to the level of a

7

constitutional violation. The classification of prisoners is a matter left to the sound discretion of prison officials, Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983), and prison officials are granted broad administrative and discretionary authority over the institutions they manage and the lawfully incarcerated persons under their control. Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). So long as the conditions and degree of confinement are within the sentence imposed on an inmate and do not otherwise violate the Constitution, the due process clause does not itself subject a prison official's treatment of an inmate to judicial oversight. Hewitt, 459 U.S. 468, 103 S.Ct. at 869. Further, where the decision to keep an inmate is reasonably related to legitimate security objectives and is not an exaggerated response to security considerations, there is no denial of due process. McCord v. Maggio, 910 F.2d 1248 (5th Cir. 1990). Finally, inasmuch as the plaintiff, as a convicted felon, is not a member of any suspect class, see Rochon v. Louisiana State Penitentiary Inmate Account, 880 F.2d 845 (5th Cir. 1989), the Court need only apply a rational basis test to determine whether maintaining him at his assigned custody classification was reasonably related to the achievement of legitimate penological objectives.

This test is met in the instant case. Specifically, the plaintiff does not dispute the defendant's assertion that the reason for the plaintiff's initial classification to the Camp J Management Program was because he had been involved in an aggravated fight with a co-inmate at another institution. For this reason, prison officials determined that placement of the plaintiff in a restrictive environment at LSP was appropriate, and the Court will not

8

second-guess this determination.[5] Further, with regard to the plaintiff's contention that his constitutional right to due process was violated by his initial placement at Camp J (allegedly without a hearing) and by the defendant's action in conducting periodic reviews of his custody status and deciding to maintain the plaintiff at that location, this claim is precluded by the rule set forth in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In Sandin, the United States Supreme Court noted that, while in rare situations, an inmate may claim entitlement to procedural due process in connection with prison disciplinary proceedings, such entitlement comes into play only where the state action has exceeded the inmate's sentence in an atypical or unexpected way. See, e.g., Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to a mental hospital); Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (involuntary administration of psychotropic drugs). Normally, however, the Due Process Clause does not afford an inmate a protected liberty interest in any particular procedures attendant to prison disciplinary hearings that would entitle him to the protections set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). As stated in Sandin, it is only those restrictions which impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests. Thus, while Sandin makes it clear that punishments which impact upon the duration of an inmate's confinement, which exceed the sentence in an unexpected manner, or which impose "atypical and significant hardship[s]", will give rise to the

---

[5]To the extent that the plaintiff suggests that prison regulations have not been followed because prison officials have improperly relied upon the "original reason for lockdown" in determining to maintain him at that classification level, this claim is not one of constitutional dimension because a mere violation of state rules or regulations does not amount to a constitutional violation. Jackson v. Cain, 864 F.2d 1235 (5th Cir. 1989).

9

protection of the Due Process Clause, more routine disciplinary proceedings will not invoke this constitutional protection. Accordingly, the plaintiff's claim in the instant case that he was not afforded appropriate due process upon placement at Camp J and during periodic reviews of his custody status may not be seen to infringe upon any constitutionally protected liberty interest which would invoke the protection of the Due Process Clause of the Fourteenth Amendment. See Dickerson v. Cain, 241 Fed.Appx. 193 (5th Cir. 2007) (holding that placement in Camp J at LSP does not present "an atypical or significant hardship beyond the ordinary incidents of prison life"). See also Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995). In Woods, supra, the Court upheld the dismissal of a claim by an inmate that he had been maintained in punitive segregated confinement at LSP for more than four (4) years, with the reason given for such confinement being the serious nature of the original offenses. The Court found that, in providing the inmate with periodic reviews of his custody status, prison officials had provided him with all the process that was due. Similarly in the instant case, the pertinent LSP regulation provides that prison personnel shall conduct periodic reviews of the custody status of inmates assigned to the Camp J Management Program and that the review panel conducting such reviews is authorized, "as it deems appropriate", to determine the level to which an inmate is assigned within the Program or to transfer the inmate to appropriate quarters outside of Camp J. The plaintiff does not dispute that he was provided with such periodic review, and it is clear that the pertinent regulation does not mandate his release from the Camp J Management Program upon the passage of a certain period of time or the occurrence of a certain event. Accordingly, the Court finds that the plaintiff has failed to state a viable claim of the denial of due process in connection with his classification to the Camp J Management Program

10

Case 3:12-cv-00092-BAJ-MJU   Document 36   01/25/13   Page 10 of 14

or his maintenance at that classification between September, 2010 and April, 2012. Cf., Wilkerson v. Stalder, supra (potential due process claim existed where inmates's confinement in extended lockdown exceeded a period of thirty (30) years).

The plaintiff also asserts that his constitutional right to equal protection has been violated as a result of the defendants' actions. In this regard, the Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons similarly situated be treated alike. See Rolf v. City of San Antonio, 77 F.3d 823 (5th Cir. 1996). In order to successfully plead an equal protection claim, an inmate plaintiff must allege and show that he is a member of a specific group and that prison officials acted with a discriminatory purpose because of such membership. A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Taylor v. Johnson, 257 F.3d 470 (5th Cir. 2001). An inmate cannot base an equal protection claim solely on a personal belief that he has been a victim of discrimination. Woods v. Edwards, supra. Specifically, vague and conclusory allegations are insufficient to state an equal protection claim. See Pedraza v. Meyer, 919 F.2d 317 (5th Cir. 1990). In the instant case, all that the plaintiff has alleged is that other inmates assigned to the Camp J Management Program were released from the Program whereas he continued to be classified thereto. This assertion is insufficient to state a claim that prison officials intentionally singled out the plaintiff, as a member of a particular group, for disparate treatment or that the plaintiff is even a member of such a group. Accordingly, this claim does not rise to the level of a constitutional violation and must be dismissed.

11

Case 3:12-cv-00092-BAJ-MJU   Document 36   01/25/13   Page 11 of 14

Finally, to the extent that the plaintiff's allegation may be interpreted as complaining of the deprivations to which he was subjected while classified to the Camp J Management Program, although an inmate has a constitutional right under the Eighth Amendment to be free from exposure to cruel and unusual conditions of confinement, the Eighth Amendment, "does not mandate comfortable prisons". Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Rather, it imposes upon prison officials only minimum requirements in the treatment and facilities which they provide to prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). While prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994), citing Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, under a subjective standard, the Court looks to whether the prison officials allegedly responsible for the deprivation have been "'deliberately indifferent' to inmate health or safety". Farmer v. Brennan, supra. Specifically, the officials must have been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they must also have drawn the inference. Id. While some conditions of confinement may establish an Eighth Amendment violation "in combination", when each would not do so alone, this will occur only when these conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific

deprivation of a single human need exists. Id. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra.

In the instant case, there is no indication that the plaintiff was deprived of any basic human need. The most that he has alleged is that, while classified to the Camp J Management Program, he was denied certain privileges and benefits. Specifically, "inmates get one hour a day out of their cell to shower and walk along their tier .... [and] [t]here are restrictions on personal property, reading materials, access to legal resources, work, no education resources, no T.V., and medical and visitation rights are limited." These deprivations, however, alone or in combination, have not deprived the plaintiff of the "minimal civilized measure of life's necessities" or of any specific "basic human need." Under these circumstances, therefore, the Court concludes that this claim does not rise to the level of a constitutional violation.

The plaintiff also seeks to invoke the supplemental jurisdiction of this court over state law claims arising from the incidents complained of. A district court, however, may decline to exercise supplemental jurisdiction over state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims asserted against the moving defendants be dismissed, the Court concludes that it is appropriate for the Court to decline the exercise of supplemental jurisdiction over the plaintiff's state law claims asserted herein.

13

Case 3:12-cv-00092-BAJ-MJU   Document 36   01/25/13   Page 13 of 14

Accordingly,

**IT IS ORDERED** that the Court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

**IT IS FURTHER ORDERED** that the defendants' Motion for Summary Judgment, rec.doc.no. 29, be and is hereby **GRANTED**, dismissing the plaintiff's federal claims, with prejudice, and that this action be dismissed, reserving to the plaintiff any state law claims which he may have.

Judgment shall entered accordingly.

Baton Rouge, Louisiana, this 24th day of January, 2013.

**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**